# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | |
| The Oath accounts walterwallace001@yahoo.com and chromosome_xv@yahoo.com, more fully described in Attachment A-1. ) | Case No.   MJ20-662 |

## AMENDED APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, attached hereto and incorporated herein by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |

The application is based on these facts:

✓ See Affidavit of Special Agent Dean Giboney, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_Dean W. Giboney_
*Applicant's signature*

Dean Giboney, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   10/15/2020                                      _____
*Judge's signature*

City and state:   Seattle, Washington          Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

1

## <u>AFFIDAVIT</u>

2

3   STATE OF WASHINGTON       )
                              )      ss
4   COUNTY OF KING            )

5

6      I, Dean W. Giboney, being first duly sworn, depose and state as follows:

7   ## I.   INTRODUCTION AND AGENT BACKGROUND

8      1.   I am a Special Agent of the Federal Bureau of Investigation (FBI) currently

9   assigned to the Seattle Field Office. I have been employed as a Special Agent of the FBI

10  since 2004. I have received basic law enforcement training, including training at the FBI

11  Academy, as well as other specialized federal law enforcement training. In the course of my

12  official duties as a Special Agent, I have participated in and supervised investigations

13  involving a variety of kidnapping, narcotics, firearms, money laundering, identity theft, wire

14  fraud and conspiracy offenses, and I have assisted in multiple investigations involving bank

15  fraud, mail fraud, and health care fraud. As a result, I have experience with the various

16  methods and practices used by criminals to commit crimes through the use of computers,

17  other digital devices, and the internet.

18     2.   I make this affidavit in support of an application for a search warrant under 18

19  U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information (including the content

20  of communications) associated with the following accounts (the "Subject Accounts"):

21     3.   The **walterwallace001@yahoo.com** and **chromosome_xv@yahoo.com**

22  accounts, the information for which is stored at premises controlled by Oath Holdings Inc.

23  ("Oath"), an email provider located at 701 First Avenue, Sunnyvale, California.

24     4.   The **nwokoro_izundu@hotmail.com** account, the information for which is

25  stored at premises controlled by Microsoft Corporation ("Microsoft"), an email provider

26  located at One Microsoft Way, Redmond, Washington 98052.

27

28

---

5.      The **nwokoroizundu@gmail.com** account, the information for which is stored at premises controlled by Google, LLC ("Google"), an email provider located at 1600 Amphitheater Parkway, Mountain View, California 94043.

6.      The Subject Accounts have been used as a secondary or recovery email account by an individual, or individuals, who are believed to be operating a fraud commonly known as a "romance scam," by which these individual(s) gain the confidence and affection of a target and, via fraudulent representations, convince the target to send substantial amounts of money. The currently known victims of these individual(s) have lost approximately two million dollars to this romance scam.  The information to be disclosed is further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

7.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation, but rather those relevant to the question of whether probable cause exists to issue the requested search warrant.

8.      Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud) have been committed by persons controlling the above accounts, and, further, that the accounts contain evidence of these crimes and of the identities of the perpetrators.

## II.      JURISDICTION

9.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a

Affidavit of Special Agent Giboney - 2
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  district court of the United States . . . that – has jurisdiction over the offense being

2  investigated."

### III.    SUMMARY OF THE AFFIDAVIT

4      10.     This investigation arose out of a criminal referral by the Seattle Police

5  Department in April 2019 after one of the victims of a romance scam, Cindy Chen, a Seattle

6  resident, filed a police report. Cindy Chen reported a loss of approximately $1.5 million to

7  the individual using the alias Henry HASSELHOFF (hereinafter referred to as

8  "HASSELHOFF"). Investigation revealed another victim, Theresa Schwan, a Redmond

9  resident. Theresa Schwan reported a loss of approximately $285,000 to HASSELHOFF.

10  Both Ms. Chen and Ms. Schwan met HASSELHOFF on the mobile phone dating application

11  Bumble in January 2018. Investigation revealed that an individual going by the name Henry

12  PIERCE (hereinafter referred to as "PIERCE") used the same phone number to communicate

13  with an additional victim, Kathleen Livesey, who on January 24, 2018, filed a report via

14  telephone with the FBI's Atlantic City Resident Agency. Livesey reported a loss of

15  approximately $300,000 to PIERCE. Livesey had met PIERCE on the mobile phone dating

16  application Tinder. Similarities between PIERCE's and HASSELHOFF's interactions with

17  these three victims have led investigators to conclude that they are either the same person or

18  co-conspirators.

19      11.     HASSELHOFF used one Gmail account to communicate with Ms. Chen and

20  Ms. Schwan. The address for that account is **hasselhoffhenry@gmail.com**. HASSELHOFF

21  used this account to communicate payment directions to the victims as well as to send

22  fraudulent documentation as evidence of the claims he used to obtain financial support from

23  the victims. PIERCE, who is very likely either the same person as HASSELHOFF or

24  HASSELHOFF's co-conspirator, used a different Gmail account to communicate with Ms.

25  Livesey.  The address for that account is **henryderdienstleister@gmail.com.**  PIERCE used

26  this account to communicate with Ms. Livesey during and in connection with his romance

27  scam on Ms. Livesey.

28

Affidavit of Special Agent Giboney - 3
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    12.    A search warrant executed on Google, Inc. ("Google") in July 2019 for the
2    **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com** accounts (Case
3    Number MJ19-281) revealed that both accounts used the same secondary or recovery email
4    account of **walterwallace001@yahoo.com**, both accounts were linked to South African
5    telephone numbers, and both accounts showed login activity from the same IP address.

6    13.    A 2703(d) Order compelling production of non-content stored electronic
7    communications for the **walterwallace001@yahoo.com** (Order Number PT20-220) revealed
8    that this account was also being accessed from the same IP address used to login to
9    **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com,** and that email
10   communications were being sent between the **walterwallace001@yahoo.com** account and
11   **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com.**

12   14.    Based on my training and experience, I know that email accounts typically
13   contain evidence of the identity of the person operating the account.  Therefore, there is
14   probable cause to believe that the **walterwallace001@yahoo.com** account contains evidence
15   of HASSELHOFF's and PIERCE's true identity or identities, as well as evidence of
16   HASSELHOFF/PIERCE's wire fraud.  Moreover, in this case, as described below, there is
17   specific evidence indicating that the **walterwallace001@yahoo.com** account, and its
18   recovery accounts, contain evidence of the identity of the person committing these fraudulent
19   acts.

20   **IV.    PROBABLE CAUSE**

21   **A.    Background on Romance Scams**

22   15.    In my training and experience, a romance scam is a form of confidence fraud
23   in which perpetrators often target older women who are divorced or widowed.  The Federal
24   Bureau of Investigation's public website notes that "victims—predominantly older widowed
25   or divorced women targeted by criminal groups usually from Nigeria—are, for the most part,
26   computer literate and educated. But they are also emotionally vulnerable. And con artists
27   know exactly how to exploit that vulnerability because potential victims freely post details
28   about their lives and personalities on dating and social media sites."

Affidavit of Special Agent Giboney - 4
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     According to the Federal Trade Commission's Consumer Protection website, warning signs of romance scams include an individual that "professes love quickly; claims to be from the U.S. but is overseas for business or military service; asks for money, and lures you off the dating site; claims to need money for emergencies, hospital bills, or travel; plans to visit but can't because of an emergency." The FTC also notes that reported losses in 2019 for romance scams was $201 million.

**B.     Cindy Chen**

17.     In April 2019, the FBI Seattle Division's Complex Financial Crimes squad was contacted by an administrative specialist with the Seattle Police Department regarding a report filed by Cindy Chen in February 2019. The Seattle Police Department General Offense report contained allegations that an individual using the online alias "Henry Hasselhoff" had defrauded Ms. Chen of approximately $1.5 million from March 2018 to January 2019.

18.     On April 30, 2019, FBI Special Agents from the Seattle Field Office conducted an interview in person with Cindy Chen. Ms. Chen confirmed the details of the police report she had filed in February and provided additional documentation regarding the fraudulent claims made by HASSELHOFF.

19.     After meeting Ms. Chen on the dating application Bumble, HASSELHOFF told Ms. Chen he was an engineer currently working on a construction contract for a company called "Hydro-Quebec" in the province of Quebec in Canada.  HASSELHOFF additionally claimed that a fire on the construction site at which he worked had caused damage to expensive equipment for which he was responsible, and asked Ms. Chen to help him reimburse his employer. HASSELHOFF provided, via emails sent from the **hasselhoffhenry@gmail.com** account, documents which purported to show his contract with the company as well as the terms of payment for the job.  The contract stated that HASSELHOFF would be paid $800,000.

20.     HASSELHOFF also represented to Ms. Chen that he had a daughter in Michigan who needed substantial financial support due to a physical disability.  At

Affidavit of Special Agent Giboney - 5
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

HASSELHOFF's direction, Ms. Chen began sending funds to an individual in Michigan using cashier's checks mailed to a Fed-Ex office store.  Ms. Chen used the same method to send funds at HASSELHOFF's direction to an individual in California.  On March 24, 2018, Ms. Chen sent the first cashier's check for $8,000. Ms. Chen sent a total of thirteen cashier's checks between March 24, 2018 and July 18, 2018, totaling $203,200. HASSELHOFF discussed these payments through communications from the **hasselhoffhenry@gmail.com** account, and sent Ms. Chen the name and address of the individual in California via an April 5, 2018 email from the **hasselhoffhenry@gmail.com** account.

21.     At HASSELHOFF's direction, Ms. Chen then began withdrawing funds from her 401(k) retirement account to send to him. Ms. Chen made a total of six withdrawals from March 8, 2018 to September 6, 2018, for a total of $925,500, and $185,100 paid in tax withholdings to the Internal Revenue Service as a result of those withdrawals.

22.     HASSELHOFF reassured Ms. Chen that he had the funds to repay her "loans" to him.  HASSELHOFF directed Ms. Chen to specific websites for multiple banks where HASSELHOFF claimed to have accounts.  HASSELHOFF sent this information to Ms. Chen via email from the **hasselhoffhenry@gmail.com** account, and the emails sent to Ms. Chen included login passwords so Ms. Chen could login herself and verify the amount of money he claimed to have.  In addition, to gain Ms. Chen's trust and to convince her to continue sending him payments, HASSELHOFF would send Ms. Chen documents that purported to be promissory notes or contracts with terms of repayment for past loans that Ms. Chen had made. HASSELHOFF sent these promissory notes and contracts via emails from the **hasselhoffhenry@gmail.com** account.

23.     HASSELHOFF also made other false representations regarding his ability to repay Ms. Chen via emails from the **hasselhoffhenry@gmail.com** account.  For example, on April 6, 2018, at 6:15 AM, HASSELHOFF emailed Ms. Chen (in relevant part): "Yes I promised 10% interest which will amount to $1,800 on or before the 16th and I intend to keep my promise.  My proposal still stands and that's how it's going to be.  I'm sorry for the little mistake.  This email is proof I'll be paying back $19,800 on or before the 16th of April

Affidavit of Special Agent Giboney - 6
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

2018." HASSELHOFF did not pay Ms. Chen $19,800 (or any amount of money) by April 16, 2018. On September 23, 2018, at 9:21 AM, HASSELHOFF emailed Ms. Chen (in relevant part): "As it stands, i owe a total of $1,633,040 and i promise to payback every single dollar of it. You have my word." Investigators are not aware of any payments that HASSELHOFF has made to Ms. Chen.

24.     To further his romance scam, HASSELHOFF also used the **hasselhoffhenry@gmail.com** account to pretend to forward fraudulent emails from various banking institutions. For example, on April 13, 2018, at 6:39 AM, HASSELHOFF emailed Ms. Chen from the **hasselhoffhenry@gmail.com** account, purporting to forward an email from "RBS International Bank" requiring HASSELHOFF to pay an income tax of $13,405. HASSELHOFF then asked Ms. Chen to send a payment sufficient to cover the purported income tax payment on his behalf. On April 20, 2018, at 6:16 AM, HASSELHOFF sent an email to Ms. Chen from the **hasselhoffhenry@gmail.com** account that stated: "Good morning dear Cindy. I am forwarding you the email I got from the bank manager a few minutes ago." Below that text is a purported forwarded message from "Jeremy Howard" instructing HASSELHOFF to make two deposits of over $30,000 into his "premium offshore account" to "successfully complete activation" of that account. Again, HASSELHOFF then asked Chen to send payment sufficient to cover those two deposits over $30,000.

25.     Beginning on May 9, 2018, HASSELHOFF also used the **hasselhoffhenry@gmail.com** account to communicate with other email accounts believed to be fraudulent, each time carbon copying Ms. Chen's email account. Specifically, HASSELHOFF communicated with a "Steve Percy" and "Thomas Cook," each representing themselves as representatives of Credit Suisse. The email address for "Steve Percy" was steve.percy@creditsuises.com and the email address for "Thomas Cook" was thomas.cook@creditsuises.com. In my training and experience, scammers typically use fake email addresses with slight misspellings of actual company names—in this case, "creditsuises" rather than "creditsuisse"—when constructing fake online identities with which to further their scam. I believe HASSELHOFF (or his associates or co-conspirators)

Affidavit of Special Agent Giboney - 7
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

created these "creditsuises" dummy email accounts for the purpose of furthering the fraudulent scam involving Ms. Chen and, likely, to further other similar scams.

26.    Ms. Chen never met HASSELHOFF.  During most of the period in which they communicated, HASSELHOFF claimed to be either in Canada or in the United Kingdom. He and Ms. Chen would repeatedly plan to meet in person, but HASSELHOFF would repeatedly provide an excuse to avoid a face-to-face meeting. When Ms. Chen, worried about HASSELHOFF's health given that he had stopped communicating with her, contacted local law enforcement in Liverpool, England in January 2019 to conduct a welfare check on HASSELHOFF, those authorities reported that the address HASSELHOFF had provided to Ms. Chen returned to a construction site, and that HASSELHOFF had never been a patient at the hospital where he told Ms. Chen he had received treatment.

27.    In my training and experience, the details of Ms. Chen's experience with HASSELHOFF closely matches a typical romance scam.  Ms. Chen is an older, educated woman.  HASSELHOFF quickly professed his love for Ms. Chen despite never having met her; quickly moved their communications off of the dating site on which they met; claimed to be overseas during most of their romance; refused to meet Ms. Chen face-to-face, often providing last-minute excuses to cancel plans already made; requested money immediately and in increasing amounts; and claimed to need those funds for emergencies such as tax payments, penalties, and funds for his disabled daughter.  In addition, HASSELHOFF's requests for funds followed a pattern typical, in my training and experience, of online scammers: initial requests for large sums, followed by promises of repayment, followed by additional requests for funds that are supposedly going to enable the victim to be repaid (or even to earn additional money).

## C.    Theresa Schwan

28.    On April 25, 2019, an FBI Special Agent from the Seattle Field Office conducted a telephonic interview with Theresa Schwan. Ms. Schwan provided details of her interactions with the individual using the alias Henry HASSELHOFF.

29.     Ms. Schwan met Henry HASSELHOFF on the dating application Bumble on or about January 23, 2018. They utilized the application's messaging feature for about four days and then moved the majority of their communications to Google Hangouts. Ms. Schwan traveled extensively and used Google Hangouts to keep in touch with HASSELHOFF while she was abroad.

30.     HASSELHOFF represented to Ms. Schwan that he was an engineer with a contract for a company called "Hydro-Quebec" in Canada. He provided Ms. Schwan documentation of his work contract via the **hasselhoffhenry@gmail.com** account.  As with Ms. Chen, HASSELHOFF eventually requested financial assistance from Ms. Schwan, purportedly to deal with a fire at a construction site that resulted in HASSELHOFF's liability for damaged equipment.

31.     HASSELHOFF additionally told Ms. Schwan that he had a daughter in Cadillac, Michigan, who required financial assistance due to a physical disability.

32.     At HASSELHOFF's direction and based on the representations noted above, Ms. Schwan sent funds to an individual in California.  HASSELHOFF sent an email on April 10, 2018, at 6:27 AM, from the **hasselhoffhenry@gmail.com** account, providing Ms. Schwan the address in California to which the funds were to be sent.  From the **hasselhoffhenry@gmail.com** account, HASSELHOFF also sent Schwan a promissory note for repayment of $285,500 on May 15, 2018.

33.     In my training and experience, the details of Ms. Schwan's experience with HASSELHOFF also closely matches a typical romance scam.  Ms. Schwan is an older, educated woman.  HASSELHOFF quickly professed his love for Ms. Schwan despite never having met her; quickly moved their communications off of the dating site on which they met; claimed to be overseas during most of their romance; never met Ms. Schwan face-to-face; requested money immediately and in large amounts; and claimed to need those funds for emergencies such as personal liability for an accident or support for his disabled daughter.

Affidavit of Special Agent Giboney - 9
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.     The Flower Shop Payment Records**

34.     HASSELHOFF sent flower arrangements to both Ms. Chen and Ms. Schwan in February and March 2018, respectively, from Pike Place Flowers, a flower shop located at 1501 1st Avenue, Seattle, Washington. The payment records for both these orders list the **hasselhoffhenry@gmail.com** account as the contact email for the orders.

**E.     Kathleen Livesey**

35.     In May 2019, investigative activity revealed a report filed by the FBI's Atlantic City Resident Agency detailing a telephone call received by the duty Agent on January 24, 2018, from Kathleen Livesey of Pleasantville, New Jersey.

36.     Ms. Livesey reported that she had sent approximately $300,000 to an individual using the alias Henry PIERCE, whom she had met on the mobile dating application Tinder in March 2017.  Ms. Livesey reported that she and PIERCE had arranged to meet in person numerous times over a 10-month period, but "something came up" each time and they had never met in person.  Eventually, PIERCE informed Ms. Livesey that he would send his travel plans to her via text message or email, but Ms. Livesey never received them. PIERCE then cut off all contact with Ms. Livesey.  PIERCE used the **henryderdienstleister@gmail.com** account to communicate with Ms. Livesey.

37.     PIERCE used the same telephone number to communicate with Ms. Livesey that HASSELHOFF used to communicate with Ms. Chen and Ms. Schwan.  In my training and experience, this indicates that the individual or individuals controlling the HASSELHOFF account were the same individual or individuals in contact with Ms. Livesey.

38.     Ms. Livesey reported that the individual communicating as PIERCE directed her to send money to "his friend," "Jeremy S. Howard."  As recounted earlier, the individual controlling the HASSELHOFF account had also forwarded emails to Ms. Chen from an individual named "Jeremy Howard."  In my training and experience, this also indicates that the individual or individuals controlling the HASSELHOFF account were the same individual or individuals in contact with Ms. Livesey.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

39.     On June 17, 2019, an FBI Special Agent from the Seattle Field Office conducted a telephonic interview with Ms. Livesey.  Ms. Livesey confirmed the details of the report that she had filed in January 2018 with the Atlantic City Resident Agency.  Ms. Livesey recalled that PIERCE told her that he was an engineer, and sent her documentation from his purported employer; he then stated that there was a tragedy on the job site, and that he needed money to help pay for the insurance and the damages.  PIERCE claimed that he would pay Ms. Livesey back after he was paid $800,000 for a contract job.  The details of this story—that PIERCE is an engineer, that an accident occurred at the site, requiring immediate funds, and the amount that the employer was purportedly going to pay PIERCE ($800,000) all closely match the story that HASSELHOFF told Ms. Chen.

40.     Ms. Livesey recalled that she had sent money to a woman in California and a woman in Michigan at PIERCE's direction.  PIERCE told Ms. Livesey that he had a daughter and grandchildren in Michigan that needed financial support. PIERCE's representation that he had a daughter in Michigan who needed financial support, and his instruction to Ms. Livesey that she send money to a woman in California and a woman in Michigan, closely match the representations and instructions made by HASSELHOFF to Ms. Chen and Ms. Schwan.  In my training and experience, this also indicates that the individual or individuals controlling the HASSELHOFF account were the same individual or individuals in contact with Ms. Livesey.

41.     Finally, the FBI's duty Agent reported that PIERCE had provided Ms. Livesey with an eight-digit bank account number with JP Morgan Chase bank, into which Ms. Livesey was to deposit funds.  Ms. Chen reported that HASSELHOFF had provided her with a nine-digit bank account number with JP Morgan Chase bank, associated with the individual in California to whom Ms. Chen was instructed to send funds.  The eight digits provided by Ms. Livesey are the same as the last eight digits of the nine-digit number provided to Ms. Chen; only the first digit is missing from Ms. Livesey's account number.  It is highly likely that the account numbers provided to Ms. Livesey and Ms. Chen were in fact the same, and that the duty Agent simply mistranscribed Ms. Livesey's account number, omitting the first

digit.  Again, in my training and experience, this also indicates that the individual or individuals controlling the HASSELHOFF account were the same individual or individuals in contact with Ms. Livesey.

42.    Ms. Livesey declared Chapter 13 Bankruptcy in 2018 after PIERCE failed to repay the approximately $300,000.

43.    In my training and experience, the details of Ms. Livesey's experience with PIERCE also closely matches a typical romance scam.  Ms. Livesey is an older woman. PIERCE quickly moved their communications off of the dating site on which they met; never met Ms. Livesey face-to-face, despite their making frequent plans to meet; requested money repeatedly and in large amounts; promised to repay those funds; and claimed to need those funds for emergencies such as personal liability for an accident or support for his disabled daughter.  Moreover, the fact that PIERCE and HASSELHOFF told Ms. Livesey, Ms. Chen, and Ms. Schwan the same implausible story at different times—that an accident at a job site required huge sums of money to relieve PIERCE or HASSELHOFF of personal liability for the accident—further indicates that that representation was false, as the likelihood of such an accident occurring on multiple occasions is plainly very low.

**F.    Additional Connections Between E-Mail Accounts**

44.    A search warrant executed on Google, Inc. ("Google") in July 2019 for the **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com** accounts (Case Number MJ19-281) revealed that both accounts used the same secondary or recovery email account of **walterwallace001@yahoo.com**, both accounts were linked to South African telephone numbers, and both accounts showed login activity from the same Internet Protocol (IP) address (102.182.234.201), which is (according to an open records internet search) also located in South Africa.  The **hasselhoffhenry@gmail.com** account had 39 logins or logouts (out of 48 total listed by Google) originating from that IP address.  Five other logins or logouts were associate with two other South African IP addresses.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

45.     The 102.182.234.201 IP address was used regularly to login to the

**hasselhoffhenry@gmail.com** account between November 2018 and July 2019 including

multiple logins on June 3, 2019, as noted in the following table:

| Time | IP Address | Type |
|---|---|---|
| 2019/06/03-15:27:02-UTC | 102.182.234.201 | Logout |
| 2019/06/03-15:26:38-UTC | 102.182.234.201 | Login |
| 2019/06/03-03:55:21-UTC | 102.182.234.201 | Logout |
| 201906/03-03:54:48 -UTC | 102.182.234.201 | Login |

46.     The IP log activity provided by Google for the

**henryderdienstleister@gmail.com** account was much more limited revealing only one

login and one logout for the account.  However, these login data points were notable in that

they came from the same IP address (102.182.234.201), and were made on June 3, 2019,

which is the same date that **hasselhoffhenry@gmail.com** account was accessed from this IP

address.  The table below shows that IP log data provided by Google for the

**henryderdienstleister@gmail.com** account:

| Time | IP Address | Type |
|---|---|---|
| 2019/06/03-15:26:25-UTC | 102.182.234.201 | Logout |
| 2019/06/03-04:05:11-UTC | 102.182.234.201 | Login |

47.     As this example illustrates, these accounts were at times logged into on the

same day, and at times one account would be logged off within minutes or seconds of the

second account being logged in.  Based on that pattern, it is reasonable to believe that the

same individual is responsible for this activity, as this pattern is consistent with a single user

who can only log into one email account on his internet browser at a time.

48.     Google records also revealed that **walterwallace001@yahoo.com** was the

secondary or recovery account for 43 additional Google email accounts.  Of these accounts,

22 are associated with Nigerian Short Message Service ("SMS") phone numbers and 8 are

associated with South African telephone numbers.  Many of these accounts such as

heislerhenri@gmail.com, mr.henrypierce@gmail.com, mr.walterwallace1@gmail.com,

Affidavit of Special Agent Giboney - 13
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

walterpierce0092@gmail.com, walterwallace149@gmail.com, walterpierce512@gmail.com, walwalll0019@gmail.com, and wwalter746@gmail.com are similar to, or are a combination of, other names used to defraud the victims in this case.  Several other accounts, such as brig.markcampbell.usarmy@gmail.com, capt.prinsleypierce.usarmy@gmail.com, kellylinacre.usarmy@gmail.com, and sgt.wwxx11.usarmy@gmail.com give the false impression that they are official U.S. military email accounts, whereas other email accounts such as ahmadsawi.OmanOils@gmail.com, constructionicc9@gmail.com, and walterwallace.austinbank@gmail.com give the appearance that they are related with businesses in the oil, construction or banking industries.  In my training and experience, these industries, and spoofed email accounts from these industries, have frequently been used in organized fraud schemes, and more particularly, have been used to target romance scam victims.  Additionally, using multiple of these accounts in a coordinated effort can build the trust and confidence of unsuspecting individuals.

49.     A 2703(d) Order compelling production of non-content stored electronic communications for the **walterwallace001@yahoo.com** (Order Number PT20-220) revealed that this account was also being accessed from the same IP address used to login to **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com.**  Between May 31, 2019 and May 22, 2020, records provided by Oath showed that the same IP address, 102.182.234.201, was used on 34 separate occasions (out of 37 total IP records) to login to the **walterwallace001@yahoo.com** account.  In addition, the remaining three IP records were of three other alternative South African IP addresses.

50.     A review of email header information provided by Oath showed that there were five outgoing emails from the **walterwallace001@yahoo.com** account to the **hasselhoffhenry@gmail.com** account and one incoming email between May 8, 2018 and February 17, 2020.  Similarly, the email header information showed that there were six outgoing emails from the **walterwallace001@yahoo.com** account to the **henryderdienstleister@gmail.com** account between July 29, 2017 and May 27, 2018. Given that the **walterwallace001@yahoo.com** account is the secondary or recovery email

Affidavit of Special Agent Giboney - 14
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

for both these accounts, one would not necessarily expect a large volume of email to be sent between the accounts. This low volume of emails between accounts is consistent with the **walterwallace001@yahoo.com** account being utilized by one individual who does not need to often send communications between multiple accounts that he or she controls.

51.    The search warrant results for the **hasselhoffhenry@gmail.com** and **henryderdienstleister@gmail.com** accounts reveal that the emails sent from the **walterwallace001@yahoo.com** account to those two gmail accounts, though limited in number, include: 1) images of a "Henry Hasselhoff," 2) forwarded documents associated with "HydroQuebec" that are similar to those used in the scams described in this affidavit, and 3) photos of Amazon gift cards with the PIN numbers scratched off so that they can be redeemed. These communications are thus consistent with the **walterwallace001@yahoo.com** account being used to further the romance scams described above. One particular photograph that was sent from the **walterwallace001@yahoo.com** account to the **hasselhoffhenry@gmail.com** account on June 24, 2018 is the same as a photograph that HASSELHOFF sent to Ms. Chen. This photograph (which depicts an apparently real individual whose identity this target assumed) is depicted below:



52.    In my training and experience, information, to include stored content, about a secondary, or recovery email account, particularly one that is used as a hub for multiple other

accounts involved in fraudulent activity, provides law enforcement officers a better chance of identifying the individual or individuals conducting the fraud as well as other potential victims of the fraud than the account used to contact victims.  In my training and experience, perpetrators will attempt to shield their true identity by opening new accounts under fake identities to communicate directly with victims.  However, when opening these accounts, perpetrators will often be asked to provide a backup or recovery email.  Even if the perpetrators create multiple layers of email accounts under fake identities, at some point within those layers will exist the first email account or set of email accounts the perpetrator opened under a fake identity.  That first email account or set of email accounts are more likely to have used the perpetrator's real email account—the email account that the perpetrator holds in their name, or uses to conduct their actual personal business or correspondence—because, at the time the perpetrator opened those first accounts, they had no other fake identity accounts that they could use as a recovery account.  Email accounts opened with fake identities can often slowly be unwound to reveal an actual email account with the ultimate user's real identity—if the user has not taken other steps to conceal that identity.  Recovery accounts also provide investigators an opportunity to identify other methods being employed to further the fraudulent scheme and determine the extent to which other co-conspirators may be involved in assisting with the scheme.

**G.      Potential identity of perpetrator**

        53.      Based on the search warrants and 2703(d) Order described above, law enforcement also knows information that may indicate the true identity of the perpetrator of this fraudulent activity.  That information is outlined below.  However, if indeed this is the true identity of the perpetrator, there is cause to believe the email addresses described below would contain further evidence of that fact, as well as further evidence of the perpetrator's current activities or location.

        54.      On April 19, 2018, a PDF document was sent from the **hasselhoffhenry@gmail.com** account to the email account **nwokoro_izundu@hotmail.com**.  That PDF document is 2 pages long, and displays what

Affidavit of Special Agent Giboney - 16
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  appears to be a Nigerian passport, along with the stamped entry and exit information from

2  that passport.  Those two pages are copied below:



55.     Several aspects of this passport are notable.  First, the passport is a Nigerian

passport.  As noted above, numerous email accounts associated with the

**hasselhoffhenry@gmail.com, henryderdienstleister@gmail.com,** and

**walterwallace001@yahoo.com** accounts are linked to Nigerian SMS phone numbers.

Second, the individual's name (Izundu Victor Arthur Nwokoro) matches the name of the

hotmail account to which this was sent, which may indicate that that hotmail account is an

account used by this individual to conduct transactions or business using his real identity.

Third, the passport includes a departure from Lagos, Nigeria on May 9, 2016, and an entry

into South Africa on May 10, 2016.  As noted above, one consistent IP address frequently

associated with these three accounts (102.182.234.201) is a South African IP address.

Moreover, the entry on May 10, 2016 is through the O.R. Tambo International Airport,

Affidavit of Special Agent Giboney - 17
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

which is located just outside of Johannesburg, South Africa.  The IP address 102.182.234.201, according to open-records internet searches, returns to a location also in or just outside of Johannesburg (according to Google Maps, that location is approximately a 20-minute drive from the O.R. Tambo International Airport).

56.     There are numerous connections between the email accounts used to perpetrate this fraud noted above (the **hasselhoffhenry@gmail.com,** **henryderdienstleister@gmail.com,** and **walterwallace001@yahoo.com** accounts) and email accounts apparently bearing the name Izundu Nwokoro:

a.      Another email account, **nwokoroizundu@gmail.com**, uses that same individual's name in the account name.  Its recovery or secondary account is also **walterwallace001@yahoo.com**.

b.      From information gleaned from the 2703(d) Order described above, law enforcement knows that emails were sent from the **walterwallace001@yahoo.com** email account to the **nwokoro_izundu@hotmail.com** account (on September 6, 2014) and the **nwokoroizundu@gmail.com** account (on April 13, 2020).

c.      The **nwokoroizundu@gmail.com** account is also in the contacts list for the **hasselhoffhenry@gmail.com** email account.

d.      The verified recovery account for **walterwallace001@yahoo.com** is **chromosome_xv@yahoo.com**.  The verified alternate or recovery email address for **chromosome_xv@yahoo.com** is **nwokoroizundu@gmail.com**.

57.     In addition, there are other connections between these accounts and the information shown on the images of the passport detailed above:

Affidavit of Special Agent Giboney - 18
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.   The subscriber information for **walterwallace001@yahoo.com** lists the user as "Walter Wallace," with a date of birth listed as May 12, 1970. Nwokoro's date of birth, as listed on his passport, is May 12, 1992—the same day, but a different year.

b.   The subscriber information for **chromosome_xv@yahoo.com** lists the user as "Nwokoro Izundu," with a date of birth of May 12, 1989.  Again, Nwokoro's date of birth from his passport lists the same day (May 12) but a different year (1992).  The **chromosome_xv@yahoo.com** account was registered in Nigeria on 02/23/2010, but has recent password changes from 05/17/2020 and 06/14/2020 from IP address 102.182.234.201, which is the South African IP address noted above.  These dates are consistent with the movement shown on Nwokoro's passport images from Nigeria to South Africa in 2016.  Moreover, of the 380 recent IP addresses associated with activity on the **chromosome_xv@yahoo.com** account, 189 were the 102.182.234.201 address noted above.

58.   Based on the foregoing information, law enforcement believes that "Izundu Nwokoro" may be the real identity of the individual operating these accounts and perpetrating the romance scam frauds described in this affidavit.  Law enforcement believes that all of these accounts are likely to contain further information either confirming or refuting that Nwokoro is the real operator of these accounts, and will likely also contain other information that could reveal Nwokoro's current location, real occupation, and other frauds in which Nwokoro may be engaged.

## V.   BACKGROUND REGARDING OATH, GOOGLE AND MICROSOFT'S SERVICES

### A.   Emails

59.   In my training and experience, I have learned that Oath, Google, and Microsoft provide a variety of online services, including electronic mail ("email") access, to the general public. Oath, Google, and Microsoft allow subscribers to obtain email accounts at the

Affidavit of Special Agent Giboney - 19
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

domain names "yahoo.com", "gmail.com", and "hotmail.com", respectively, like the email accounts listed in Attachments A-1 through A-3.

60.     Subscribers obtain an account by registering with Oath, Google, and Microsoft. When doing so, email providers like Oath, Google, and Microsoft ask the subscriber to provide certain personal identifying information.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users, and to help establish who has dominion and control over the account.  Indeed, even if the content of emails in an account has been deleted, subscriber information may still be important evidence that would be useful to identify the account's user or users.

61.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help identify which computers or other devices were used to access the email account.

62.     In general, an email that is sent to an Oath, Google, or Microsoft subscriber is stored on the email provider's servers until the subscriber deletes the email.  When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to the email provider's servers, and then transmitted to its end destination.  Email providers

Affidavit of Special Agent Giboney - 20
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

often maintain a copy of received and sent emails.  Unless the sender specifically deletes an email from the email provider's server, the email can remain on the system indefinitely. Even if the subscriber deletes the email, it may continue to be available on the email provider's servers for some period of time.

63.     A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email.  If an email user writes a draft message but does not send it, that message may also be saved by the email provider but may not include all of these categories of data. Users of "yahoo.com" email accounts also have the option to use Yahoo Messenger, a chat function.  Based upon my training and experience, all of these types of information may be evidence of crimes under investigation.  Stored emails and chats not only may contain communications relating to crimes, but also help identify the participants in those crimes.

64.     Email providers are also able to provide information that will assist law enforcement in identifying other accounts associated with the Subject Accounts, namely, information identifying and relating to other accounts used by the same subscriber.  This information includes any forwarding or fetching accounts[1] relating to the Subject Accounts, all other accounts linked to the Subject Accounts because they were accessed from the same computer (referred to as "cookie overlap"), all other accounts that list the same Short Message Service ("SMS") phone number as the Subject Accounts, all other accounts that list the same recovery email addresses[2] as do the Subject Accounts, and all other accounts that share the same creation IP address as the Subject Accounts.  Information associated with these associated accounts will assist law enforcement in determining who controls the

---

[1] A forwarding or fetching account related to the Subject Accounts would be a separate email account that can be set up by the user to receive copies of all of the email sent to the Subject Accounts.

[2] The recovery email address is an additional email address supplied by the user that is used by the email provider to confirm your username after you create an email account, help you if you are having trouble signing into your account or have forgotten your password, or alert you to any unusual activity involving your email address.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Subject Accounts and will also help to identify other email accounts and individuals relevant to the investigation.

**B.   Customer Service Communications**

65.      In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

**C.   Other Google Services**

66.      In addition to email and chat, Google offers subscribers numerous other services including:  Android, Blogger, Google Alerts, Google Calendar, Google Chrome Sync, Google Cloud Print, Google Developers Console, Google Drive, Google Hangouts, Google Maps, Google Payments, Google Photos, Google Search Console, Google Voice, Google+, Google Profile, Location History, Web & Activity, and YouTube, among others. Thus, a subscriber to a Google account can also store files, including address books, contact lists, calendar data, photographs and other files, on servers maintained and/or owned by Google.  For example, Google Calendar is a calendar service that users may utilize to organize their schedule and share events with others.  Google Drive may be used to store data and documents, including spreadsheets, written documents (such as Word or Word Perfect) and other documents that could be used to manage a website.  Google Photos can be used to create photo albums, store photographs, and share photographs with others and "You Tube," allows users to view, store and share videos.  Google Search Console records a Google account user's search queries.  And Google Web & Activity records certain browsing history depending on whether the account holder is logged into their account.  Like many internet service companies, the services Google offers are constantly changing and evolving.

Affidavit of Special Agent Giboney - 22
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

67.     Based upon my training and experience, all of these types of information may be evidence of crimes under investigation.  Stored emails and chats not only may contain communications relating to crimes, but also help identify the participants in those crimes. Address books and contact lists may help identify co-conspirators.  Similarly, photographs and videos of co-conspirators may help identify their true identities, as opposed to supposed identities that they have used in telephone or email communications.  Documents may identify the scope of the criminal activity and calendar data may reveal the timing and extent of criminal activity.

68.     According to Google's website, "Location Reporting" allows Google to periodically store and use a device's most recent location data in connection with the Google Account connected to the device. "Location History" allows Google to store a history of location data from all devices where a user is logged into their Google Account and have enabled Location Reporting.  According to Google "[w]hen you turn on Location Reporting for a device like your iPhone or iPad, it lets Google periodically store and use that device's most recent location data in connection with your Google Account." How often Location Reporting updates location data is not fixed.  Frequency is determined by factors such as how much battery life the device has, if the device is moving, or how fast the device is moving. Google's location services may use GPS, Wi-Fi hotspots, and cellular network towers to determine an account holder's location.

69.     Based on the above, I know that if users of the target accounts utilize a mobile device to access the respective Gmail accounts identified in Attachment A-2 and have not disabled location services on their device/s or through the Google account settings, Google may have detailed records of the locations at which the account holders utilized the mobile device(s).  This type of evidence may further assist in identifying the account holders, and lead to the discovery of other evidence of the crimes under investigation.

**D.     Evidentiary Value of Email and Other Content**

70.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the

Affidavit of Special Agent Giboney - 23
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

criminal conduct under investigation, this enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contact lists, images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicated the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement), and the knowing involvement of other participants in the scheme.

71.     Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Oath, Google, and Microsoft, and its agents and employees, to assist agents in the execution of this warrant.  Once issued, the search warrants will be presented to Oath, Google, or Microsoft with direction to identify the accounts described in Attachments A-1 through A-3 to this Affidavit.

Affidavit of Special Agent Giboney - 24
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

72.     The search warrants will direct Oath, Google, or Microsoft to create exact copies of the specified accounts and records.  I, and/or other law enforcement personnel will thereafter review the copies of the accounts and records provided by Oath, Google, or Microsoft, and identify from among that content those items that come within the list of items identified on Section II to Attachments B-1 through B-3, for seizure.

73.     Analyzing the data contained in the accounts may require special technical skills, equipment, and software.  It could also be very time-consuming.  Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process.  Keywords used originally need to be modified continuously, based on interim results.  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common email, database and spreadsheet applications do not store data as searchable text.  The data may be saved, instead, in proprietary non-text format.  And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.  Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachments B-1 through B-3 to the warrants.

74.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of email communications, chat logs and documents, that identify any users of the Subject Accounts and emails sent or received in temporal proximity to incriminating emails that provide context to the incriminating communications.

## VI.     REQUEST FOR SEALING

75.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed as described in the attached

Affidavit of Special Agent Giboney - 25
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

sealing motion.  The target of this investigation has used a variety of anonymous web based email accounts, cloud computing services, and other methods to obfuscate his identities while operating an online criminal enterprise.  The target of the investigation does not know the full extent of the government's knowledge of their communication channels and email accounts.  Much of the evidence in this investigation is electronically stored information.  If alerted to the existence of the search warrants, the target under investigation could destroy evidence, including information saved to their personal computers and information stored in other web based email accounts or other online computing accounts.  Additionally, if alerted to the existence of the search warrants, the target could change patterns of behavior, notify confederates or take steps to avoid capture and prosecution.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## VII.   CONCLUSION

76.    Based on the forgoing, I request that the Court issue the proposed search warrant.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  Accordingly, by this Affidavit and Warrant I seek authority for the government to search all of the items specified in Section I of Attachments B-1 through B-3 (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to those same Attachments.

Dean W. Giboney, Affiant
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit over the telephone on the 15th day of October, 2020.

Affidavit of Special Agent Giboney - 26
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

_____ 10/15/2020
HONORABLE BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Affidavit of Special Agent Giboney - 27
USAO# 2019R00500

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A-1**

**Accounts to be Searched**

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the following Oath Holdings, Inc. ("Oath") accounts (the "Subject Accounts"), that are stored at premises controlled by Oath, a company that accepts service of legal process at 701 First Avenue, Sunnyvale, California:

1.      **walterwallace001@yahoo.com**, and any Yahoo Messenger account associated with that email address.

2.      **chromosome_xv@yahoo.com**, and any Yahoo Messenger account associated with that email address.

**ATTACHMENT B-1**

**I. Information to be disclosed by Oath, for search:**

1.      To the extent that the information described in Attachment A-1 is within the possession, custody, or control of Oath, including any emails, records, files, logs, or information that has been deleted but is still available to Oath, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Oath is required to disclose the following information to the government for each of the Subject Accounts listed in Attachment A-1:

a.      All electronic mail content and/or preserved data (including email, attachments, and embedded files);

b.      All archived Yahoo Messenger content associated with the Subject Account or the user of the Subject Account;

c.      All subscriber records associated with the specified account, including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Oath in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

d.      all contact lists;

e.      all account history, including any records of communications between Oath and any other person about issues relating to the accounts, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber in connection with the service.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      This Search Warrant also requires Oath to produce the following information (referred to collectively as "Linked Subject Accounts") for each of the Subject Accounts listed in Attachment A-1:

a.      a list of all other accounts linked to the Subject Accounts because of cookie overlap with the Subject Accounts;

b.      a list of all other accounts that list the same SMS phone number as the Subject Accounts;

c.      a list of all other accounts that list the same recovery email address as the Subject Accounts; and

d.      a list of all other accounts that shared the same creation IP address as the Subject Accounts within 30 days of creation.

3.      This Search Warrant also requires Oath to produce the following information for each of the Linked Subject Accounts described in item 2 above of this Attachment B-I:

a.      Subscriber records for each of the Linked Subject Accounts including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Oath in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts.

b.      All records and other information (not including the contents of communications) relating to the Linked Subject Accounts, including:

i.      Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date time, length, and method of connections, data transfer volume; user names; and source and destination Internet Protocol Addresses; cookie IDs; browser type;

1        ii.     Information about each communication sent or received by the

2  Account(s), including the date and time of the communication, the method of

3  communication, and the source and destination of the communication (such as source and

4  destination email addresses, IP addresses, and telephone numbers);

5        iii.    All records pertaining to devices associated with the accounts to

6  include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

7

8     Oath is hereby ordered to disclose the above information to the government <u>within 14</u>

9  <u>days of service</u> of this warrant.

10

11  **II.  Information to be seized by the government:**

12     All information described above in Section I that constitutes evidence and

13  instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), those violations occurring

14  between January 1, 2017 and the present, including, for each account or identifier listed on

15  Attachment A-1, information pertaining to the following matters:

16        a.     Content that serves to identify any person who uses or accesses the

17  Subject Accounts or who exercises in any way any dominion or control over the accounts;

18        b.     Content relating to the furtherance of fraudulent requests for funds

19        related to the "romance scam";

20        c.     Content that may constitute communications in furtherance of the

21        crimes enumerated above;

22        d.     Content that may identify assets including bank accounts, commodities

23        accounts, trading accounts, personal property and/or real estate that may

24        represent proceeds of intrusion activity or fraud or are traceable to such

25        proceeds;

26        e.     Content that may reveal the current or past location of the individual or

27        individuals using the Subject Accounts;

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.      Content that may reveal the identities of and relationships between co-conspirators;

g.      Content that may identify any alias names, online user names, "handles" and/or "nics" of those who exercise in any way any dominion or control over the specified accounts as well as records or information that may reveal the true identities of these individuals;

h.      Other log records, including IP address captures, associated with the specified account;

i.      Records or information showing the location from which the account user has accessed or utilized the accounts, including GPS, Wi-Fi, or cell tower proximity records related to the accounts;

j.      Address lists or buddy/contact lists associated with the Subject Accounts;

k.      Subscriber records associated with the specified accounts, including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Oath in relation to the accounts; 6) account log files (login IP address, account activation IP addresses, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

l.     Records of communications between Oath and any person purporting to be the account holder about issues relating to the accounts, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

m.    Information identifying accounts that are linked or associated with the Subject Accounts.

This warrant authorizes a review of electronically stored information seized, copied, or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

4   I, _____, attest, under penalties of perjury by the

5   laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

6   contained in this certification is true and correct.  I am employed by Oath Holdings, Inc.

7   ("Oath"), and my title is _____.  I am qualified to authenticate

8   the records attached hereto because I am familiar with how the records were created,

9   managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of

10   the original records in the custody of Oath.  The attached records consist of _____

11   (pages/CDs/megabytes).  I further state that:

12       a.      all records attached to this certificate were made at or near the time of the

13   occurrence of the matter set forth by, or from information transmitted by, a person with

14   knowledge of those matters, they were kept in the ordinary course of the regularly conducted

15   business activity of Oath, and they were made by Oath as a regular practice; and

16       b.      such records were generated by Oath's electronic process or system that

17   produces an accurate result, to wit:

18           1.      the records were copied from electronic device(s), storage medium(s),

19   or file(s) in the custody of Oath in a manner to ensure that they are true duplicates of the

20   original records; and

21           2.      the process or system is regularly verified by Oath, and at all times

22   pertinent to the records certified here the process and system functioned properly and

23   normally.

24       I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

25   the Federal Rules of Evidence.

26

27   _____    _____
     Date                                                Signature

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970